# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

STEPHEN SULLIVAN, on behalf of himself and all others similarly situated,

                Plaintiff,

          - against -

BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, THE ROYAL BANK OF SCOTLAND PLC, AND JOHN DOE NOS. 1-50,

                Defendants.

Docket No. 13-cv-1159

Honorable Milton I. Shadur

ECF Case

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR TRANSFER

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................1

Statement of Facts .......................................................................................................4

Argument .....................................................................................................................7

    I.    This District Is A More Convenient Forum—or Is As Least As Convenient A Forum—For This Action Than The Southern District of New York ......................8

        A.    Although Not Entitled To As Much Deference As In A Non-Class Action, The Named Plaintiffs' Choice Of Forum Is Entitled To Significant Deference Where, As Here, Significant Evidence Is Located In This District Which Is The Futures Contract Trading Capital Of The World ...................................................................................8

            1. Plaintiff's Choice of Forum ........................................................8

            2. The Situs of Material Events.......................................................9

            3. Access to Sources of Proof .......................................................10

            4. Convenience of Witnesses........................................................10

            5. Convenience of Parties .............................................................11

    II.    Defendants Have Failed To Show That The Transfer to the Southern District of New York Will Serve The Interests Of Justice..........................................12

CONCLUSION        ...............................................................................15

# TABLE OF AUTHORITIES

## Cases

*Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp .2d 958 (N.D. Ill. 2000).................................. 13, 14

*Board of Trustees of the Health and Welfare Dep't of the Construction and General Laborers' District Counsel of Chicago and Vicinity v. Kruzan*, 2011 WL 6140530 (N.D. Ill. Dec. 8, 2011)................................................................................................................................ 8

*Chicago, Rock Island & Pacific Railroad Co. v. Igoe*, 220 F.2d 299 (7th Cir. 1955).................... 8

*Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986) ................................................ 7, 12

*Eckstein v. Balcor Film Investors*, 8 F.3d 1121 (7th Cir. 1993) ........................................ 11,13,14

*Felicia, Ltd. v. Gulf Am. Barge, Ltd.*, 555 F. Supp. 801 (N.D. Ill. 1983) ................................... 7, 8

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839 L.Ed. 1055 (1947) ..................... 13

*In re LIBOR-Based Financial Instruments Antitrust Litig.*, 11 MD 2262 (S.D.N.Y.) ............... 1,8

*In the Matter of Barclays PLC, Barclays Bank PLC and Barclays Capital, Inc.*, CFTC Docket No. 12-25 (CFTC June 27, 2012) ........................................................ 12

*Laydon v. Mizuho Bank, Ltd.*, 12-cv-3419 (S.D.N.Y.) ............................................................ 1,8

*M.T. McBrian, Inc. v. Liebert Corp.*, 1992 WL 300989 (N.D. Ill. 1992)................................ 7, 13

*Met-L-Wood Corp. v. SWS Industries, Inc.*, 594 F.Supp. 706 (N.D. Ill. 1984) ............................ 8

*Midas Int'l Corp. v. Chesley*, 2012 WL 1357708 (N.D. Ill. April 19, 2012) ...................... 7, 9, 10

*Precision Steel Warehouse, Inc. v. Kastar, Inc.*, 1985 WL 3600 (N.D. Ill. 1985) ......................... 8

*Undertow Software, Inc. v. Advanced Tracking Technologies, Inc.*, 2002 WL 31890062 (N.D. Ill. 2002)................................................................................. *passim*

*United States v. The Royal Bank of Scotland, PLC*, __ cv__ (Dist. of Conn.) ............................ 12

*United States v. UBS Securities Japan Co., Ltd.*, 12-cr-268 (Dist. of Conn.) .............................. 12

*Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805 (1964). ........................................... 13, 14

**Statutes**

28 U.S.C. §1404(a) ................................................................................................................. *passim*

**Rules**

17 C.F.R. §3.10 ................................................................................................................................ 9

**Other Authorities**

U.S. District Court Judicial Caseload Profile for the Northern District of Illinois .................. 14,15

## INTRODUCTION

Plaintiff Stephen Sullivan ("Plaintiff"), through his undersigned counsel, respectfully submits this memorandum of law and the accompanying Declaration of Vincent Briganti, dated April 4, 2013 ("Briganti Decl.") in opposition to the April 1, 2013 motion [Docket No. 32] and memorandum of law [Docket No. 33](hereinafter, "Def. Mem.") filed by Defendants Barclays PLC, Barclays Bank PLC, Barclays Capital Inc. ("Barclays"), UBS AG ("UBS"), and The Royal Bank of Scotland plc ("RBS" and collectively with Barclays and UBS, "Defendants") to transfer this action to the Southern District of New York ("SDNY") pursuant to 28 U.S.C. § 1404(a).

Defendants' motion to transfer should be denied for the following reasons:

First, Defendants' argument that transfer is supported because "the SDNY is unquestionably the main locus of benchmark interest rate-related litigation in the United States" such that "Plaintiffs in these cases will undoubtedly seek overlapping discovery, and continued coordination of the pre-trial process—in New York—will be essential to conserve judicial resources, avoid inconsistent rulings, and reduce the overall cost of litigation[]" (Def. Mem. at pp. 2-3) is meritless. While the Euribor Litigation[1] pending before Your Honor, the Euroyen TIBOR Litigation[2] pending before SDNY Judge George B. Daniels, and the U.S. Dollar LIBOR Litigation[3] pending before SDNY Judge Naomi Reice Buchwald all involve allegations that

---

[1] "Euribor Litigation" refers to the within captioned-action, *Sullivan v. Barclays PLC, et al.*, 13-cv-1159 (N.D. Ill.)(MIS).

[2] "Euroyen TIBOR Litigation" refers to *Laydon* v. *Mizuho Bank, Ltd. et al.*, 12-cv-3419 (S.D.N.Y)(GBD). Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg") has been appointed as interim lead class counsel in the Euroyen TIBOR Litigation. See Docket No. 99 (12-cv-3419 (S.D.N.Y)).

[3] "U.S. Dollar LIBOR Litigation" refers to the consolidated multidistrict litigation captioned: *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-MD-2262 (S.D.N.Y.)(NRB). Lovell Stewart Halebian & Jacobson LLP ("Lovell Stewart") has been appointed as interim lead class

Defendants (and others) allegedly manipulated and restrained trade in trillions of dollars in interest rate futures contracts and other interest rate derivative contracts so as to reap billions in illicit trading profits for themselves, the similarities between the cases end there.

Indeed, critical factual and legal differences exist between the litigations, including that the litigations are brought on behalf of **different** putative classes, for **different** class contracts, which were allegedly manipulated by **different** submissions of false reports, for **different** interest rates, as well as other (complimentary) **different** manipulative conduct in the commodity futures markets, over **different** periods of time, by **different** defendants, and **different** personnel within each defendant (*i.e.*, interest rate traders and submitters), who were located at **different** offices, and supervised by **different** senior managers, and who were allegedly aided and abetted in their manipulation and restraint of trade by **different** presently identified and unidentified co-conspirators, including certain interdealer derivatives brokers. See Briganti Decl., at ¶¶4-6.

Both SDNY Judge Daniels and SDNY Judge Buchwald recognized the existence of these critical differences (and others) in <u>rejecting</u> Defendants' request that the Euroyen TIBOR Litigation pending before Judge Daniels be transferred as a related case to Judge Buchwald for coordinated proceedings with the U.S. Dollar LIBOR Litigation. See Briganti Decl., at ¶¶7-12 and Exhibits ("Ex.") 1-4 (attaching letter requests by Defendants for transfer in the Euroyen TIBOR Litigation and Plaintiff's responses thereto). Defendants fail to apprise the Court of this very significant ruling which undercuts a core reasoning underlying Defendants' present transfer motion (see Def. Mem. at 2-3) -- that a supposed relatedness between the interest rate litigations supports transfer and coordination to conserve judicial resources, avoid inconsistent rulings, reduce the overall cost of litigation, and avoid duplicative discovery. Defendants should be

counsel for the Exchange-Based Plaintiff Class in the U.S. Dollar LIBOR Litigation. See Docket No. 90 (11-MD-2262 (S.D.N.Y.)).

collaterally estopped from recycling herein these already rejected arguments. See Argument, p. 7, *infra.*

Counsel for defendants also sang a different song at oral argument in the U.S. Dollar LIBOR Litigation when they argued that the UBS Settlements and the RBS Settlements in Euribor had "nothing…that refers to US dollar LIBOR. That's what this case is about and therefore, those settlements do not, in our view, bear upon the issues before [the Court] this morning." Judge Buchwald concurred: "Let's remember, this case only involves US dollar LIBOR, okay?" See Briganti Decl., at ¶13, Ex. 5.

Second, the Northern District of Illinois, the locus of the commodity futures trading capital of the world, has a substantial connection to the Euribor litigation, more so on balance than any other single U.S. judicial district, including the SDNY. Plaintiff Stephen Sullivan, a sophisticated commodity trader with more than 25 years of trading experience, has a strong connection to Chicago and its commodity markets. Plaintiff is a resident of Chicago and is currently a member of the Chicago Board of Trade ("CBOT") and Chicago Mercantile Exchange ("CME"), both headquartered in this District. Furthermore, Plaintiff (and the class) traded Euribor futures contracts that are the subject of this lawsuit through futures commission merchants ("FCMs") which are located in this District. Briganti Decl., at ¶¶15. In addition, other leading FCMs as well LIFFE exchange members with Euribor futures contract trading rights are either Chicago-based or have offices in Chicago. Briganti Decl., at ¶¶15-17. Thus, more independent witnesses (*i.e.,* witnesses who are not controlled by any party) are likely present or may be found in this District versus any other single District, including the SDNY. See Argument, pp. 9-10, *infra.* Thus, Defendants' argument that the SDNY has a connection to

the material events of this litigation and the Northern District of Illinois has none (see Def. Mem. at p. 3) is not well founded.

Third, additional factors governing transfer under 28 U.S.C. § 1404(a) on balance favor the Northern District of Illinois. For instance, each of the Defendants has an office, a subsidiary or a related entity in this District. See Arg., p. 8, *infra*

## STATEMENT OF FACTS

On February 12, 2013, Plaintiff commenced this action against the Defendants pursuant to the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and common law on behalf of himself and a putative class comprised of all other U.S. investors who purchased or sold, during the period of at least June 1, 2005 through at least June 30, 2010 (the "Class Period"), a NYSE Euronext LIFFE ("LIFFE") Euro Interbank Offered Rate futures contracts ("Euribor futures contracts"). See February 12, 2013 Complaint (hereinafter "Cmp.")[Docket No. 1].

Euribor is intended to reflect the rate of interest charged on short-term loans of unsecured funds denominated in the Euro currency between prime banks in the wholesale money (or interbank) market. In addition to the use of Euribor in pricing interbank loans, Euribor is used to benchmark and price settle over $200 trillion of financial products transacted in the U.S. and abroad, including Euribor futures contracts. The Three-month Euribor futures contract transacted in by Plaintiff and absent Class members is one of the most actively traded interest rate contracts in the world, and is benchmarked and price settled specifically to Three-Month Euribor. Trillions in notional value of Euribor futures contracts were traded domestically by U.S. investors during the Class Period on LIFFE, a global derivatives exchange and wholly-owned subsidiary of NYSE Euronext group. Cmp., at ¶¶9, 43-48.

U.S. investor's domestic trading of Euribor futures contracts has been permitted pursuant to publicly filed requests for no-action relief by LIFFE and its members to the CFTC. Cmp., at ¶48, Briganti Decl., at ¶ 16. Based on LIFFE's representations, the CFTC confirmed that it would not recommend that the Commission institute enforcement action against LIFFE or its members solely based upon LIFFE's failure to seek designation as a contract market or registration as a derivatives transaction execution facility under Sections 5 and 5a of the U.S. Commodity Exchange Act ("CEA") "if: (i) LIFFE members trade for their proprietary accounts through LIFFE CONNECT®, LIFFE's electronic trading and order matching system, **in the U.S.**; (ii) LIFFE members that are **registered with the Commission as futures commission merchants (FCM)** or that are exempt from such registration pursuant to Rule 30.10 (Rule 30.10 Firms) **submit** orders **from U.S. customers** for transmission to LIFFE CONNECT®; and/or (iii) LIFFE members that are **registered with the Commission as FCMs** or that are Rule 30.10 Firms **accept orders** through automated order routing systems (AORS) **from U.S. customers** for submission to LIFFE CONNECT®." CFTC Staff Letter No. 99-31 (July 23, 1999), at p. 16 (emphasis added). Briganti Decl., at ¶16, Ex. 6.

There are approximately 147 LIFFE members with US-based operations eligible to trade Euribor futures contracts on LIFFE CONNECT. Of the 147, 108 (73.47%) are Chicago-based or have a Chicago affiliate. A complete list of current LIFFE members may be found at the following link: https://globalderivatives.nyx.com/en/listview/members. See Briganti Decl. at ¶ 17.

LIFFE's customers include U.S. banks, pension and hedge funds, algorithmic and proprietary traders, as well as institutional and individual investors. On a daily basis, LIFFE

estimates approximately $40 million a second in financial instruments, including Euribor futures

contracts, are traded through LIFFE CONNECT. Cmp., at ¶48.

In October 2011, the CME, located in this District, launched its own Euribor futures

contract which – identical to the LIFFE Euribor futures contract transacted by Plaintiff and

members of the putative class. Cmp., at ¶ 23.

Defendants have reached agreements with government regulators resulting in the

payment – to date -- of over **$2.5 billion** in fines and penalties (among other relief) to the U.S.

Department of Justice ("DOJ"), U.S. Commodity Futures Trading Commission ("CFTC"), and

the U.K. Financial Services Authority ("FSA") to resolve criminal and civil charges relating to

Defendants' unlawful combination, agreement and conspiracy to fix and restrain trade in, and

manipulate Euribor and Euribor futures contracts (among other financial instruments). Cmp., at

¶¶ 12-18.

Although the settlements concern manipulation and restraints of trade of Euribor and

other interest rates (such as U.S. Dollar or Yen-LIBOR), key differences exist between the

manipulations, including, *inter alia*, the involvement of different personnel (e.g., interest rate

traders and submitters) within each defendant for each different interest rate. See Briganti Decl.,

at ¶¶ 6-12, Exs. 1-4. Defendants have themselves taken the position that their unlawful conduct

relating to one interest rate (e.g., Euribor) is not relevant to their unlawful conduct in another

(U.S. Dollar LIBOR). [4] Briganti Decl., at ¶ 13.

---

[4] *See also* Dkt. 115, 11 MDL 2262, February 17, 2012 Defendants' Letter to Judge Buchwald, at p. 18 ("Plaintiffs' demand for 'materials already provided to U.S. and foreign governmental entities in connection with their investigations of alleged manipulation or misreporting of LIBOR' seeks materials that is **irrelevant** to their non-specific allegations. The initial complaints allege misconduct concerning one of the ten different LIBOR rates (*i.e.*, US Dollar), yet plaintiffs demand production of a **massive amount** of information concerning **other** LIBOR rates and similar reference rates [such as Euribor].") (emphasis added).

Furthermore, the Barclays Defendants, pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act (Pub. L. No. 108-237, tit. II, 118 Stat. 661, 665, extended by Pub. L. No. 111-190, 124 Stat. 1275), have been granted conditional leniency for alleged anticompetitive conduct relating to Euribor. Briganti Decl., at ¶ 20.

## ARGUMENT

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). A transfer is appropriate if: (1) venue is proper in both the transferor and transferee courts; (2) transfer will serve the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. *Midas Int'l Corp. v. Chesley*, 2012 WL 1357708, *3 (N.D. Ill. 2012). Whether to transfer a case is within the sound discretion of the transferor court. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-220 (7th Cir. 1986); *Felicia, Ltd. v. Gulf American Barge, Ltd.*, 555 F.Supp. 801 (N.D. Ill. 1983) (Shadur, J.) ("Though it evolved from the forum non conveniens doctrine, Section 1404(a) confers broader discretion on a district court than its common law antecedent.").

The party requesting transfer bears the burden of demonstrating that the transferee forum is clearly more convenient than the transferor forum. *Id.*; *M.T. McBrian, Inc. v. Liebert Corp.*, 1992 WL 300989, at *2 (N.D. Ill. 1992) (Shadur, Snr. J.) (recognizing "Section 1404(a) rulings almost never add anything to the corpus juris. . .").

Defendants concede that venue is proper in either District, and have failed to meet their burden with respect to the appropriateness of transferring this action under Section 1404(a).

I. **This District Is A More Convenient Forum– or Is As Least As Convenient A Forum-- For This Action Than The Southern District of New York**

A. **Although Not Entitled To As Much Deference As In A Non-Class Action, The Named Plaintiffs' Choice Of Forum Is Entitled To Significant Deference Where, As Here, Significant Evidence Is Located In This District Which Is The Futures Contract Trading Capital Of The World**

In deciding whether transfer would promote convenience, courts in the Seventh Circuit consider such private factors as: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the parties; and (5) the convenience of witnesses." *Bd. of Trustees of the Health and Welfare Dep't of the Const. and Gen. Laborers' Dist. Counsel of Chicago and Vicinity v. Kruzan*, 2011 WL 6140530, *3 (N.D. Ill. 2011).[5] The private interests herein call for the retention and not transfer of this action.

1. **Plaintiffs' Choice of Forum**. "The plaintiffs' forum choice is generally given great deference, particularly where the plaintiff resides in the chosen district." *Kruzan*, 2011 WL 6140530, *3. *Precision Steel Warehouse, Inc. v. Kastar, Inc.*, 1985 WL 3600, *1 (N.D. Ill. 1985) (Shadur, J.)(denying transfer and observing "[e]xcept where none of the facts giving rise to the claim are forum-connected – and that is not true here – plaintiffs' choice of forum is entitled to significant consideration."), citing *Chicago, Rock Island & Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) and *Met-L-Wood Corp. v. SWS Industries, Inc.*, 594 F.Supp. 706, 710 (N.D. Ill. 1984). Here, Plaintiff resides in Chicago and is a sophisticated commodity trader with a strong connection to Chicago and its commodity markets. Briganti Decl., at ¶ 15. *See, Felicia, Ltd. v. Gulf Am. Barge, Ltd.*, 555 F. Supp. 801, 807-08 (N.D. Ill.

---

[5] Defendants' arguments for transfer have already been rejected when they failed to have the Euroyen litigation, *Laydon v. Mizuho Bank, Ltd.*, 12-cv-3419 (S.D.N.Y.) (before Judge Daniels) transferred to Judge Buchwald for coordinated proceedings with *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 11 MD 2262 (S.D.N.Y.). *See* Briganti Decl., at ¶¶7-12, Exs. 1-4.

1983) (Shadur, J.) (denying transfer where (i) physical evidence was located in Illinois; (ii) the key witness lived in Illinois; and (iii) the litigation involved "economic injury to an Illinois citizen."). This factor weighs against transfer from the Northern District of Illinois to the Southern District of New York.

      2.    **The Situs of Material Events**. Chicago is the futures capital of the world and is the situs of material events relevant to this action. Plaintiff, a resident of Chicago, purchased and sold hundreds of millions of dollars in notional value of Euribor futures contracts. In permitting Euribor futures contracts to be traded in the United States, the CFTC requires that FCMs registered with the CFTC handle all such trades. 17 C.F.R. §3.10; Briganti Decl., at ¶ 16. Plaintiff's FCM, through which he traded his Euribor futures contracts, is located in Chicago. Leading FCMs, through which Euribor futures contracts are traded domestically, are also located in Chicago. Briganti Decl., at ¶ 15. A significant number of LIFFE members with US-based operations that are eligible to trade Euribor futures contracts on LIFFE CONNECT (approximately 108 out of 147 members) are Chicago-based or have a Chicago affiliate. Briganti Decl., at ¶ 17. LIFFE is able to identify all trades which originate from the United States, including from within the Northern District of Illinois.[6]

Many of the subsidiaries of the leading banks that trade Euribor are located in this District. Furthermore, each of the Defendants (as well as related entities, *i.e.,* UBS Global Asset Management and UBS Financial Services) maintain an office in this District. *See* Cmp. ¶¶ 25-

---

[6] July 23, 1999 CFTC letter to Katten Muchin & Zavis on Behalf of LIFFE Administration and Management Regarding Sections 5 and 5a of the Commodity Exchange Act – LIFFE Administration and Management; Request for No-Action Relief from Contract Market Designation Requirement, p. 23, fn. 71 (Briganti Decl., Ex. 6).

31.  Defendant Barclays Capital Inc, a clearing affiliate of Defendant Barclays, is located in this District.

In October 2011, the CME launched its own Euribor futures contract which – identical to the LIFFE Euribor futures contract transacted by Plaintiff – is benchmarked and price settled to Euribor.  Cmp. ¶23.

The Northern District of Illinois therefore has a substantial connection to Euribor trading, and arguably more so than any other U.S. judicial district, including the SDNY.

3.  **Access to Sources of Proof**.  The relative ease of access to sources of proof in the Northern District of Illinois versus the Southern District of New York, given the fact that most of this information is in electronic format, is neutral.  *Undertow Software, Inc. v. Advanced Tracking Technologies, Inc.*, 2002 WL 31890062, *1 (N.D. Ill. 2002) (Shadur, Snr. J)(denying transfer and finding that because of modern electronic means of retrieval each side's emphasis that the documents are located at its home base this factor is a "nonstarter (except perhaps in an especially document-rich case, where cost of reproduction may bulk large.").  Furthermore, Defendants have already gathered and produced substantial amounts of discovery (millions of pages of documents) to regulatory agencies in connection with government investigations and their Euribor-based settlements.  There will be little, if any, burden to Defendants to re-produce these same documents (in electronic format) to Plaintiff herein.

4.  **Convenience of Witnesses**.  "'[C]ourts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum.  Because party witnesses normally appear voluntarily, the 'convenience of non-party witnesses is more significant than party witnesses.'"  *Midas Int'l Corp.*, 2012 WL 1357708, at *4.

Plaintiffs respectfully submit that the Court should consider that non-party (independent) witnesses (e.g., Chicago-based LIFFE members, FCMs, etc.) who are beyond the subpoena power of this Court might be hesitant to testify without compulsory process. The "caselaw looks primarily at witnesses whom the litigants do not control directly, as they do their own corporate officers and employees," that is, "independent witnesses." *Undertow Software*, 2002 WL 31890062, *1 (transfer denied where (i) defendant had access to more employee and financial resources than plaintiff; (ii) defendant had control over out-of-state witnesses; (iii) technology would limit discovery burden; and (iv) even if transfer were granted under Section 1404(a), the law of the transferor court would "remain applicable" in the transferee court (citing *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126-27 (7th Cir. 1993)).

As set forth *supra*, there exists a substantial number of independent witnesses in this District (*i.e.,* Chicago-based FCMs and LIFFE members), and arguably more so in this District than in any other single U.S. judicial district, including the SDNY. This factor heavily favors retention of this case in the Northern District of Illinois.

5.    **Convenience of Parties**. Transfer to the Southern District of New York would merely shift inconvenience from one party to the other, and that is no basis to grant Defendants' motion. *Midas Int'l Corp.*, 2012 WL 1357708, *4 (where transfer would merely shift the inconvenience from one party to another, transfer is not warranted). Defendants each maintain an office in this District. Furthermore, to the extent that Defendants' interest rate traders, submitters, senior managers, etc. who carried out the alleged Euribor manipulation are not located in the United States, regardless of whether the case is prosecuted in the Northern District

of Illinois or the SDNY, these witnesses will have to travel internationally.[7] However, to the extent that witnesses travel from Europe to the United States, their polar flight routes can land in Chicago as easily as New York. Both convenience factors weigh against transfer.

Furthermore, no government litigation relating to Euribor has been filed in the Southern District of New York. See Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, As Amended, Making Findings and Imposing Remedial Sanctions in *In the Matter of Barclays PLC, Barclays Bank PLC and Barclays Capital, Inc.*, CFTC Docket No. 12-25 (CFTC June 27, 2012). Government settlements relating to the manipulation of Yen-LIBOR by UBS-related entities and RBS have been filed in the District of Connecticut. See *U.S. v. UBS Securities Japan Co., Ltd.*, 12-cr-268 (Dist. of Conn.), Plea Agreement as to UBS Securities Japan Co., Ltd., filed Dec. 19, 2012 (ECF No. 4); *U.S. v. The Royal Bank of Scotland, PLC*, __ cr__ (Dist. of Conn.), Deferred Prosecution Agreement, to be filed April 12, 2013 - available at http://www.justice.gov/criminal/vns/caseup/rbssecurities.html.

## II. Defendants Have Failed To Show That The Transfer to the Southern District of New York Will Serve The Interests Of Justice

The final factor in a Section 1404(a) motion is whether or not the transfer would serve the interests of justice. This is a broad category relating to the "efficient functioning of the courts, not the merits of the underlying dispute." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th

---

[7] Defendants argue that "Plaintiff does not allege that any relevant actor – such as a Euribor submitter or derivatives trader – was ever located in this District." Def. Mem., at pp. 8-9 (*citing*, Cmp. ¶ 65(c) ("Barclays' London Office"); Cmp. ¶ 66(b) ("Barclays employs derivatives traders in New York and London"); Cmp. ¶ 70(e) (UBS employees "located in London and elsewhere"); Cmp. ¶ 70(k) (UBS traders "located in London"); Cmp. ¶ 70(n) ("[T]rading desks in Zurich . . . made all of UBS's Euribor submissions."); Cmp. ¶ 71(c) ("UBS employs derivatives traders throughout the world, including Stamford, Connecticut, London, Zurich and Tokyo, who trade financial instruments tied to Euribor.")). Def. Mem., at p. 10 ("the Settlements identify conduct that occurred in various locations around the world—such as New York, London and Tokyo.").

Cir. 1986); *Undertow Software*, 2002 WL 31890062, at *1 ("it is conventional wisdom that the 'interest of justice' criterion—the third element specified in Section 1404( a)—embodies the congeries of factors that *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) looked to in the forum non-conveniens context.").[8] The public interests herein call for the retention of this case in the Northern District of Illinois.

In making this determination, the court considers each proposed forum court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of litigating the case in each locale. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 961 (N.D. Ill. 2000).

First, this Court and the SDNY are equally familiar and capable of deciding questions of federal law. However, "the law of the transferor court would remain applicable in the event of a Section 1404(a) transfer." *Undertow Software, Inc.*, 2002 WL 31890062, at *2. In *Undertow Software*, this Court found that:

> When the law of the United States is geographically non-uniform, a transferee court should use the rule of the transferee forum in order to implement the central conclusion of *Van Dusen* and *Ferens*: that a transfer under §1404(a) accomplishes "but a change of courtrooms." *Van Dusen,* 376 U.S. at 639, 84 S.Ct. at 821.

*Id.*, citing *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1127 (7th Cir. 1993).[9]

---

[8] The *Gulf Oil* factors are (1) ease of access to sources of proof; (2) amenability of unwilling witnesses to the service of process; (3) cost of obtaining attendance of willing witnesses at trial; (4) relationship of the forum to the issues in the litigation; (5) accessibility of premises involved in the litigation; (6) relative congestion of the two court dockets, and the related prospects for an early trial here or there; (7) "relative familiarity of the courts with the state law supplying the applicable rules of decision"). *See M.T. McBrian, Inc. v. Liebert Corp.*, 1992 WL 300989, at *2 (N.D. Ill. 1992)(Shadur, Snr. J.). As discussed herein, each of the foregoing factors (except factor (6), which is inapplicable) call for the retention and not transfer of this action.

[9] Second Circuit law conflicts with this approach. *See Menowitz v. Brown*, 991 F.2d 36, 40-41 (2d Cir. 1993) (discussing 28 U.S.C. §1407 and holding that "[a]lthough federal courts sometimes arrive at different constructions of federal law, federal law (unlike state law) is supposed to be unitary. Thus, the rule of *Van Dusen* does not apply by analogy where a case is

Antitrust is a question of federal law and unjust enrichment is a creature of common law. "Under that approach, a [New York] District Court would have to explore Seventh Circuit jurisprudence to see whether it differed from that in the [Second Circuit] and, if so, would then have to follow the Seventh Circuit's decision law (just as in *Van Dusen* and *Eckstein* teach). This Court will confront no such extra hurdle if the [instant] case is retained here." *See, Undertow Software, Inc.*, 2002 WL 31890062, at *2.

Transferring this action to the SDNY would require that District to apply the substantial body of Seventh Circuit jurisprudence in respect of antitrust law and Illinois unjust enrichment law on behalf of investors of commodity futures contracts.

Next, the Court may consider which district will provide the parties with the fastest progression to trial. The two most relevant statistics are the median months from filing to disposition of a case and the median months from filing to trial. *Amoco Oil Co.*, 90 F.Supp.2d at 962; *Mech. Sys., Inc. v. The Cadre Corp.*, 567 F.Supp. 948, 952 and fn. 5 ("[l]ike many statistical arguments, a contention based on averages is flawed unless it is also shown that the current case is 'average' (whatever that may mean) as well" and finding that "any pair of litigants that addresses the issues and concludes discovery with dispatch can go to trial in this Court's courtroom too in less than a year.").

This District has a shorter time of average disposition of cases. For the 12 months ending September 2012, the median time from filing to disposition in a civil case in this District was 6.5 months; the median time from filing to trial in a civil case was 31.2 months. U.S. District Court Judicial Caseload Profile for the Northern District of Illinois. For the 12 months ending September 2012, the median time from filing to disposition in a civil case in the SDNY was 7.8

---

transferred under §1407 to a federal court that has a different construction of relevant federal law than the federal court in which the action was filed.").

months; the median time from filing to trial in a civil case was 27.2 months. U.S. District Court Judicial Caseload Profile for the Southern District of New York. *Id.*

Nonetheless, this action involves antitrust and unjust enrichment claims on behalf of purchasers of Euribor futures contracts. Such claims are subject to a substantial body of decisional law in the Seventh Circuit and, plaintiffs' counsel respectfully submit, is no more than an average complex litigation case. In addition, plaintiffs are prepared to proceed with alacrity through discovery and resolution of their claims before this Court.

The relevant statistics for both fora are similar, however, they are slightly more favorable to this District. Moreover, this action, at the outset, does not present exceedingly complex issues and plaintiffs are well-prepared to proceed apace. Thus, this factor weighs against transfer.

Finally, this District is the futures contracts trading capital of the world. A strong public policy exists to have this action remain in this Court. Chicago courts have a long history of policing the commodity markets. Transferring this action out of this District will run counter to these policies and render open to interpretation by another District the Seventh Circuit's substantial body of jurisprudence regarding federal and state law claims on behalf of purchasers of futures contracts alleging commodity manipulation. This factor weighs against transfer.

## CONCLUSION

In sum, both the private interests and public interests at issue call for the retention of this case in the Northern District of Illinois. Defendants have not carried their heavy burden of demonstrating that the Southern District of New York is clearly the more convenient forum. Accordingly, this Court should deny Defendants' motion to transfer.

Dated: New York, New York
        April 4, 2013

By:   /s/ Douglas M. Chalmers
      Doug M. Chalmers, Esq.
      77 West Wacker Drive
      Suite 4800
      Chicago, Illinois 60101
      Tel.: 312-606-8700
      Fax: 312-444-1028
      ARDC: 6200986

      LOWEY DANNENBERG COHEN &
      HART, P.C.
      Vincent Briganti, Esq.
      Geoffrey M. Horn, Esq.
      One North Broadway
      White Plains, New York 10601
      Tel.: 914-997-0500
      Fax: 914-997-0035

      LOVELL STEWART HALEBIAN
      JACOBSON LLP
      Christopher Lovell
      Gary Jacobson
      Ian T. Stoll
      Fred T. Isquith, Jr.
      61 Broadway, Suite 501
      New York, NY 10006
      (212) 608-1900
      (212) 719-4677 (fax)

      *Counsel for Plaintiff and the Proposed
      Class*

I hereby certify that, on April 4, 2013, a true and correct copy of the foregoing ***Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Transfer*** was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

<u>/s/ Ian Stoll</u>