UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN SULLIVAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>BARCLAYS PLC, BARCLAYS BANK PLC, BARCLAYS CAPITAL INC., UBS AG, THE ROYAL BANK OF SCOTLAND PLC, AND JOHN DOE NOS. 1-50,<br><br>Defendants. | Docket No. 13-cv-1159<br><br>Honorable Milton I. Shadur<br><br>ECF Case |

## DECLARATION OF VINCENT BRIGANTI

I, Vincent Briganti, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a shareholder of the law firm of Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg"), and submit this Declaration in Support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Transfer.

2. On February 12, 2013, Plaintiff Stephen Sullivan ("Plaintiff") commenced this action against Defendants Barclays PLC, Barclays Bank PLC, Barclays Capital Inc. ("Barclays"), UBS AG ("UBS"), The Royal Bank of Scotland plc ("RBS"), and John Doe Nos. 1-50 (collectively, "Defendants") pursuant to the Sherman Act, 15 U.S.C. §§ 1, *et seq.*, and common law on behalf of himself and a putative class comprised of all other U.S. investors who purchased or sold, during the period of at least June 1, 2005 through at least June 30, 2010 (the "Class Period"), a NYSE Euronext LIFFE ("LIFFE") Euro Interbank Offered Rate futures contracts ("Euribor futures contracts"). See Docket No. 1 [Complaint].

{2558 / DECL / 00116937.DOCX v2}   1

3. By motion [Docket No. 32] and supporting memorandum of law [Docket No. 33]("Def. Mem.") dated April 1, 2013, Defendants Barclays, UBS and RBS seek to have this case transferred from the Northern District of Illinois to the Southern District of New York ("SDNY") pursuant to 28 U.S.C. § 1404(a).

4. In support of their present motion to transfer, Defendants argue that "the SDNY is unquestionably the main locus of benchmark interest rate-related litigation in the United States, with more than 30 such actions currently pending in that court. The actions in the SDNY concern the benchmark interest rate submission practices of Defendants and others, and all are premised upon the multi-agency investigations into that conduct and the settlements that followed. Plaintiffs in these cases will undoubtedly seek overlapping discovery, and continued coordination of the pre-trial process—in New York—will be essential to conserve judicial resources, avoid inconsistent rulings, and reduce the overall cost of litigation. Moreover, the cases in the SDNY have advanced significantly: on March 29, 2013, the Honorable Naomi Reice Buchwald issued a comprehensive decision resolving motions to dismiss that sets out a substantive framework for analyzing benchmark interest rate-related litigation. Memorandum & Order, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-MD- 2262 (S.D.N.Y. Mar. 29, 2013) (ECF No. 286)." Def. Mem. at pp. 2-3.

5. While the Euribor Litigation[1] pending before Your Honor, the Euroyen TIBOR Litigation[2] pending before SDNY Judge George B. Daniels, and the U.S. Dollar LIBOR

---

[1] "Euribor Litigation" refers to the within captioned-action, *Sullivan v. Barclays PLC, et al.*, 13-cv-1159 (N.D. Ill.)(MIS).

[2] "Euroyen TIBOR Litigation" refers to *Laydon v. Mizuho Bank, Ltd. et al.*, 12-cv-3419 (S.D.N.Y)(GBD). Lowey Dannenberg Cohen & Hart, P.C. ("Lowey Dannenberg") has been appointed as interim lead class counsel in the Euroyen TIBOR Litigation. See Docket No. 99 (12-cv-3419 (S.D.N.Y)).

{2558 / DECL / 00116937.DOCX v2} 2

Litigation[3] pending before SDNY Judge Naomi Reice Buchwald all involve allegations that Defendants (and others) allegedly manipulated and restrained trade in trillions of dollars in interest rate futures contracts and other interest rate derivative contracts so as to reap billions in illicit trading profits for themselves, the similarities between the cases end there.

6. Critical factual and legal differences exist between the litigations. For example, the litigations are brought on behalf of different putative classes, for different class contracts, which were allegedly manipulated by different submissions of false reports for different interest rates, and (additional and complimentary) different alleged manipulative conduct in the commodity futures markets, over different periods of time, by different defendants, and different personnel within each defendant (*i.e.*, interest rate traders and submitters), who were located at different offices, and supervised by different senior managers, and who were allegedly aided and abetted in their manipulation and restraint of trade by different presently identified and unidentified co-conspirators, including certain interdealer derivatives brokers.

7. Both SDNY Judge Daniels and SDNY Judge Buchwald recognized the existence of these critical differences (and others) in rejecting defendants' request that the Euroyen TIBOR Litigation pending before Judge Daniels be transferred as a related case to Judge Buchwald for coordinated proceedings with the U.S. Dollar LIBOR Litigation.

8. Attached hereto as Exhibit 1 is a true and correct copy of an undocketed May 23, 2012 letter to the Honorable George B. Daniels and the Honorable Naomi Reice Buchwald requesting transfer of the Euroyen TIBOR Litigation for coordinated proceedings with the U.S.

---

[3] "U.S. Dollar LIBOR Litigation" refers to the consolidated multidistrict litigation captioned: *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-MD-2262 (S.D.N.Y.)(NRB). Lovell Stewart Halebian & Jacobson LLP ("Lovell Stewart") has been appointed as interim lead class counsel for the Exchange-Based Plaintiff Class in the U.S. Dollar LIBOR Litigation. See Docket No. 90 (11-MD-2262 (S.D.N.Y.)).

Dollar LIBOR Litigation. The letter was submitted by JP Morgan Chase Bank NA ("JPMorgan Chase") and a number of other defendants in the Euroyen TIBOR Litigation, including Defendants Barclays and RBS. Like here, defendants argued that transfer to and coordinated proceedings with the U.S. Dollar LIBOR Litigation was merited because, *inter alia*, (i) it would result in a substantial saving of judicial resources; (ii) the litigations could be prosecuted in a just, efficient and economical manner; (iii) the convenience of the parties and witnesses would be served; and (iv) it would avoid duplicative discovery.

9. By letter dated May 25, 2012, Lowey Dannenberg opposed defendants' request to transfer the Euroyen TIBOR Litigation from Judge Daniels to Judge Buchwald for coordinated proceedings with the U.S. Dollar LIBOR Litigation. Attached hereto as Exhibit 2 is a true and correct copy of that undocketed letter. The letter, *inter alia*, highlighted the critical differences between the litigations and how transfer and coordination would not result in savings of judicial resources or serve the interests of justice.

10. By letter dated June 4, 2012, defendants JPMorgan Chase, Barclays, RBS, *et al.* responding to Lowey Dannenberg's opposition to transfer the Euroyen TIBOR Litigation. Attached hereto as Exhibit 3 is a true and correct copy of that undocketed letter.

11. By letter dated June 5, 2012, Lowey Dannenberg submitted a reply in response and opposition to defendants' June 4, 2012 letter. Attached hereto as Exhibit 4 is a true and correct copy of that undocketed letter.

12. Following submission of the June 5, 2012 letter, I received a call from Judge Daniels' law clerk that the defendants' motion to transfer the Euroyen TIBOR Litigation to Judge Buchwald had been denied. Based on my best recollection, this telephone call took place sometime in the latter half of June 2012.

13. Recently, at the March 5, 2013 oral argument on Defendants' motion to dismiss in the U.S. Dollar LIBOR Litigation, counsel for defendants argued that the UBS Settlements and the RBS Settlements in Euribor had "nothing...that refers to US dollar LIBOR. That's what this case is about and therefore, those settlements do not, in our view, bear upon the issues before [the Court] this morning." Judge Buchwald concurred: "Let's remember, this case only involves US dollar LIBOR, okay?" Attached hereto as Exhibit 5 is a true and correct copy of excerpts from the Oral Argument Transcript in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 11 MD 2262, held before the Hon. Naomi Reice Buchwald on March 5, 2013, at pp. 8-9.

14. Defendants also argue in their present motion to transfer that "the SDNY has a connection to the material events of this litigation, as alleged, whereas this District [N.D. Ill.] has none, and litigating in the SDNY would be more convenient for the parties and witnesses." Def. Mem. at p. 3. This is not true.

15. Plaintiff Stephen Sullivan, a sophisticated commodity futures trader with more than 25 years of trading experience, has a strong connection to Chicago and its commodity markets. Plaintiff is a resident of Chicago and is currently a member of the Chicago Board of Trade ("CBOT") and Chicago Mercantile Exchange ("CME"), both headquartered in this District. Furthermore, Plaintiff's futures commission merchant ("FCM"), through which he traded the Euribor futures contracts that are the subject of this lawsuit, is located in this District. (along with other leading United States FCMs).

16. U.S. investor's domestic trading of Euribor futures contracts has been permitted pursuant to publicly filed requests for no-action relief by LIFFE to the CFTC. Based on LIFFE's representations, the CFTC confirmed that it would not recommend that the Commission institute

enforcement action against LIFFE or its members solely based upon LIFFE's failure to seek designation as a contract market or registration as a derivatives transaction execution facility under Sections 5 and 5a of the U.S. Commodity Exchange Act ("CEA") "if: (i) LIFFE members trade for their proprietary accounts through LIFFE CONNECT®, LIFFE's electronic trading and order matching system, in the U.S.; (ii) LIFFE members that are registered with the Commission as futures commission merchants (FCM) or that are exempt from such registration pursuant to Rule 30.10 (Rule 30.10 Firms) submit orders from U.S. customers for transmission to LIFFE CONNECT®; and/or (iii) LIFFE members that are registered with the Commission as FCMs or that are Rule 30.10 Firms accept orders through automated order routing systems (AORS) from U.S. customers for submission to LIFFE CONNECT®." CFTC Staff Letter No. 99-31 (July 23, 1999), at p. 16 (emphasis added). A true and correct copy of CFTC Staff Letter No. 99-31 is attached hereto as Exhibit 6.

17. There are approximately 147 LIFFE members with US-based operations eligible to trade Euribor futures contracts on LIFFE CONNECT. Of the 147, 108 are Chicago-based or have a Chicago affiliate. A complete list of current LIFFE members may be found at the following link: https://globalderivatives.nyx.com/en/listview/members

18. LIFFE's customers include U.S. banks, pension and hedge funds, algorithmic and proprietary traders, as well as institutional and individual investors. On a daily basis, LIFFE estimates approximately $40 million a second in financial instruments, including Euribor futures contracts, are traded through LIFFE CONNECT.

19. In October 2011, the CME, located in this District, launched its own Euribor futures contract which – identical to the LIFFE Euribor futures contract transacted by Plaintiff and members of the putative class.

20. The Barclays Defendants, pursuant to the Antitrust Criminal Penalty Enhancement and Reform Act (Pub. L. No. 108-237, tit. II, 118 Stat. 661, 665, extended by Pub. L. No. 111-190, 124 Stat. 1275), have been granted conditional leniency for alleged anticompetitive conduct relating to Euribor.

21. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 4, 2013
White Plains, New York

/s/ Vincent Briganti
VINCENT BRIGANTI

I hereby certify that, on April 4, 2013, a true and correct copy of the foregoing *Declaration of Vincent Briganti with Accompanying Exhibits* was filed electronically. Notice of this filing was sent by operation of the Court's ECF electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Ian Stoll