# **EXHIBIT 2**

A true and correct copy of an undocketed May 25, 2012 letter from, Lowey Dannenberg, opposing defendants' request to transfer the Euroyen TIBOR Litigation from Judge Daniels to Judge Buchwald for coordinated proceedings with the U.S. Dollar LIBOR Litigation



Lowey Dannenberg Cohen & Hart, P.C.

New York
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310
914-997-0500 Telephone
914-997-0035 Fax
www.lowey.com

Pennsylvania
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428-2977
610-941-2760 Telephone
610-862-9777 Fax

May 25, 2012

<u>**VIA FACSIMILE**</u>

The Honorable George B. Daniels
The Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:   *Laydon v. Mizuho Bank, Ltd., et al.*, No. 12-cv-3419

Dear Judges Daniels and Buchwald:

    We are counsel for Plaintiff Jeffrey Laydon, and respectfully write in response to the May 23, 2012 letter ("Letter") from counsel for Defendant JPMorgan Chase Bank N.A. ("JPMorgan").

    We write to inform the court of material facts that we believe merit Your Honors' consideration on whether to transfer the above-referenced action (the "Euroyen TIBOR Litigation") now pending before Judge Daniels to Judge Buchwald. While both the Euroyen TIBOR Litigation pending before Judge Daniels and the consolidated USD LIBOR Litigation pending before Judge Buchwald involve allegations of false reports for the purpose of manipulating key interest rates that affect billions (if not trillions) of dollars in financial instruments, the similarities between the two cases end there.[1]

    **First**, the interest rates allegedly manipulated by defendants in the Euroyen TIBOR Litigation are the Euroyen Tokyo Interbank Offered Rate ("TIBOR") and the YEN LIBOR rate. These interest rates are wholly different from the USD LIBOR interest rate allegedly manipulated by defendants in the USD LIBOR Litigation.

    **Second**, each of the YEN LIBOR, Euroyen TIBOR, and USD LIBOR interest rates is set by different groups of contributor bank panel members. The end result is that there are different,

---

[1] JP Morgan and other defendants concede that that the Euroyen TIBOR Litigation should **not** be consolidated with any of the class or individual actions that are part of the USD LIBOR Litigation because of the very "important differences between the litigations, including a different putative class, somewhat differing groups of defendants, and [] different interest rates." Letter at 1-2. **We agree.**

{2545 / LTR / 00112982.DOCX v3}



The Honorable George B. Daniels
The Honorable Naomi Reice Buchwald
May 25, 2012
Page 2

non-overlapping groups of defendants in the Euroyen TIBOR Litigation versus the USD LIBOR Litigation. The Euroyen TIBOR Litigation includes **twenty-five** contributor bank defendants, **fourteen** of which are **not** named as defendants in the USD LIBOR Litigation. See *Rochester Laborers Pension Fund v. Monsanto Co.*, 4:10CV1380 CDP, 2010 WL 3842549 (E.D. Mo. Sept. 28, 2010) (denying motion to coordinate pre-trial proceedings when cases named different defendants and "transfer is unnecessary to achieve this goal [of pretrial coordination]").[2]

**Third,** the YEN LIBOR, Euroyen TIBOR, and USD LIBOR interest rates are not only set by different bank panel members, they are set according to different protocols, rules and procedures, at different times of day (11:00 a.m. Tokyo time versus 11:00 a.m. London time), and are published by different reporting bodies (the JBA for Euroyen TIBOR and the BBA for LIBOR).

**Fourth,** the class contracts (and other financial instruments) allegedly impacted by defendants' false reporting are entirely different between the two litigations. In the Euroyen TIBOR Litigation, the class contracts are **Euroyen** futures and options contracts traded on the Chicago Mercantile Exchange ("CME"). In the USD LIBOR Litigation, the class contracts are **Eurodollar** futures and options contracts traded on the CME. The Euroyen and Eurodollar futures contracts are **different** instruments with **different** contract specifications. For example, the underlying instrument for a CME Euroyen TIBOR futures contract is a Euroyen Time Deposit having a principal value of 100,000,000 Japanese yen with a three-month maturity.[3] The underlying instrument for a CME Eurodollar futures contract is a Eurodollar Time Deposit having a principal value of USD $1,000,000 with a three-month maturity.[4] There are also a different number of contracts that are actively traded on the CME (Euroyen TIBOR futures have 20 active contract months that trade; Eurodollar futures have 40 active contract months). *Id.* Additionally, the two futures contracts are subject to different CME quote and settlement procedures. *Id.*

**Fifth,** the period of time over which defendants allegedly falsely reported Euroyen TIBOR and YEN LIBOR rates versus USD LIBOR rates are different, as reflected in the

---

[2] These fourteen defendants are (i) BNP Paribas S.A.; (ii) Citibank, Japan Ltd.; (iii) Crédit Agricole CIB; (iv) Mitsubishi UFJ Trust and Banking Corporation; (v) Mizuho Bank, Ltd.; (vi) Mizuho Corporate Bank, Ltd.; (vii) Mizuho Trust and Banking Co., Ltd.; (viii) Resona Bank, Ltd.; (ix) Shinkin Central Bank; (x) Société Générale; (xi) Sumitomo Mitsui Banking Corporation; (xii) The Bank of Yokohama, Ltd.; (xiii) The Shoko Chukin Bank; (xiv) The Sumitomo Trust and Banking Co., Ltd.

[3] See http://www.cmegroup.com/trading/interest-rates/stir/euroyen_contract_specifications.html

[4] See http://www.cmegroup.com/trading/interest-rates/stir/eurodollar_contract_specifications.html

{2545 / LTR / 00112982.DOCX v3}



The Honorable George B. Daniels
The Honorable Naomi Reice Buchwald
May 25, 2012
Page 3

different class periods alleged in the two litigations. The Euroyen TIBOR Litigation alleges a class period of at least June 1, 2006 through and including September 2010 (4 years, 3 months), whereas the USD LIBOR Litigation alleges a *shorter* class period of August 2007 through May 2010 (2 years, 9 months).

**Sixth**, there are key facts regarding certain defendants' alleged false reporting which are presently unique to the Euroyen TIBOR Litigation.

For instance, Defendant UBS AG has been granted conditional leniency by the Antitrust Division of the U.S. Department of Justice "in connection with potential antitrust or competition law violations related to submissions for Yen LIBOR and Euroyen TIBOR." Euroyen Litigation Complaint (hereinafter "¶") at ¶ 83.

The Japanese Securities and Exchange Surveillance Commission has recommended sanctions against Defendants Citibank Japan Ltd. and UBS AG for their submission of artificial Euroyen Tibor and Yen Libor rates. ¶¶16-21. As a result of such recommended sanctions, Defendant Citibank was forced to write off $50 million in losses after it unwound its positions in Euroyen Tibor and Yen Libor interest rate derivatives.

The Swiss Competition Commission is also reportedly investigating Defendants UBS AG, Bank of Tokyo-Mitsubishi UFJ Ltd., Citigroup Inc., Deutsche Bank AG, HSBC Holdings Plc, J.P. Morgan Chase & Co., Mizuho Financial Group Inc., Rabobank International, Royal Bank of Scotland Group Plc, Societe Generale SA and Sumitomo Mitsui Banking Corp, among others, for colluding with one another to manipulate Tibor and Libor rates and the prices of Euroyen-based derivatives. ¶ 86.

In addition, Canada's Competition Bureau has joined regulators in investigations into reference banks collusion and resulting manipulation of YEN LIBOR and TIBOR rates. According to public reports, "lawyers acting for the cooperating bank had told it that traders at six banks on the yen Libor panel—Citigroup Inc., Deutsche Bank AG, HSBC Holdings PLC, J.P. Morgan Chase & Co., Royal Bank of Scotland Group PLC and UBS—'entered into agreements to submit artificially high or artificially low' quotes…" ¶¶ 89-97.

**Seventh**, while Defendants here argue that coordination is necessary because there may be an overlap of discovery with the USD LIBOR Litigation (Letter at p. 4), that is the **exact opposite position** of defendants in the USD LIBOR Litigation. See Dkt. 115, 11 MDL 2262, February 17, 2012 Defendants' Letter to Judge Buchwald, at p. 18 ( "Plaintiffs' demand for 'materials already provided to U.S. and foreign governmental entities in connection with their investigations of alleged manipulation or misreporting of LIBOR' seeks materials that is **irrelevant** to their non-specific allegations. The initial complaints allege misconduct concerning



**Lowey Dannenberg Cohen & Hart, P.C.**

The Honorable George B. Daniels
The Honorable Naomi Reice Buchwald
May 25, 2012
Page 4

one of the ten different LIBOR rates (*i.e.*, US Dollar), yet plaintiffs demand production of a **massive amount** of information concerning **other** (non-U.S.) Libor rates and similar reference rates (i.e., Tibor).")(emphasis added). See *In re IBM Antitrust Litig.*, 328 F. Supp. 509, 510 (J.P.M.L. 1971) (denying transfer of two multidistrict computer industry monopoly cases to District of Minnesota for coordinated or consolidated pretrial proceedings where scope and breadth of discovery were likely to be substantially different).

In the event that there is some overlap in discovery sought by the parties in the two litigations, the parties can adopt practical measures to advance the just efficient and economical conduct of the litigations. For example, the parties can agree that notices for a particular deposition could be filed in both actions, thereby making the deposition applicable in each action. The parties could also seek to agree on a stipulation that any discovery relevant to both actions may be used in each action. See *In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litigation*, 446 F.Supp. 242, 244 (Jud.Pan.Mult.Lit.1978).

**Eighth**, the fact that the two litigations allege common but not completely overlapping claims for relief, *i.e.*, violations of the Commodity Exchange Act and Sherman Act, does not compel that the cases be coordinated. See *In re Envtl. Prot. Agency Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977) (holding that the common question of law alone does not make transfer and coordination appropriate).

Defendants' concern over a potential "risk" for inconsistent adjudications is overblown. Aside from the many factual differences between the two litigations, that the cases are subject to appellate review by the same court, *i.e.*, the Second Circuit Court of Appeals, obviates any risk of inconsistent adjudications. *In re Natural Gas Liquids Regulation Litig.*, 434 F. Supp. 665, 668 (J.P.M.L. 1977) (denying transfer and coordination because the actions fall within the same appellate jurisdiction and there is no danger of conflicting appellate determinations on the common legal question). Also, Your Honors are free, in your discretion, to confer and coordinate in the separate actions as you deem appropriate. *In re Sugar Indus. Antitrust Litig.*, 399 F. Supp. 1397, 1399 (J.P.M.L. 1975) (denying transfer and holding that the judges in the separate actions may, "in their mutual discretion, coordinate the pretrial proceedings ... whenever such coordination becomes necessary").

**Ninth**, the procedural posture of the Euroyen TIBOR Litigation is very different from the USD LIBOR Litigation. The Euroyen TIBOR Litigation was only recently filed on April 30, 2012 whereas USD LIBOR cases have been pending for more than a year before Judge Buchwald (the first such action being filed on April 15, 2011). While the Plaintiffs in the USD LIBOR Action have already filed a Consolidated and Amended Complaint and are now awaiting defendants' motions to dismiss, service of the Complaint in the Euroyen TIBOR Litigation has only recently commenced. Several foreign-defendants (or their agents and attorneys) have not



**Lowey Dannenberg Cohen & Hart, P.C.**

The Honorable George B. Daniels
The Honorable Naomi Reice Buchwald
May 25, 2012
Page 5

yet agreed to accept service. And effecting service on these foreign defendants pursuant to The Hague Convention will take at least several months.[5] After service is completed, the parties in the Euroyen TIBOR Litigation would then need to meet and confer regarding a proposed schedule for, *inter alia*, defendants' anticipated motions to dismiss.

**Lastly,** with respect to Defendants' argument that "an overlap in the parties" supports coordination, there are least 14 Defendants in the Euroyen TIBOR Litigation that are not named as defendants in the USD LIBOR Litigation. Additionally, that Laydon previously filed a case alleging claims based on Defendants' manipulation of USD LIBOR that was later consolidated with the USD LIBOR Litigation pending before Judge Buchwald is irrelevant. Laydon is not a named class representative in the USD LIBOR Litigation. We respectfully submit that Laydon and his counsel should be afforded equal opportunity to prosecute the recently filed Euroyen TIBOR Litigation in the manner that best serves the interests of the Euroyen TIBOR Litigation class. That may not be accomplished if the Euroyen TIBOR Litigation is coordinated with a far more advanced action brought on behalf of an entirely different class, with different claims, by different interim co-lead class counsel, against different defendants, for entirely different allegedly manipulative and collusive acts, over a different time period.

Respectfully submitted,

Vincent Briganti

cc: Counsel of Record in Above Referenced Action

---

[5] Defendants joining in JPMorgan's request have expressly reserved their defenses based on insufficiency of service of process. Letter, at n.1.

{2545 / LTR / 00112982.DOCX v3}