# EXHIBIT 4

A true and correct copy of an undocketed June 5, 2012, from Lowey Dannenberg in response to defendants JPMorgan Chase, Barclays, RBS, *et al*. June 4, 2012 letter responding to opposition to transfer the Euroyen TIBOR Litigation.



New York
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310

914-997-0500 Telephone
914-997-0035 Fax

www.lowey.com

Pennsylvania
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428-2977

610-941-2760 Telephone
610-862-9777 Fax

June 5, 2012

**VIA FACSIMILE**

The Honorable George B. Daniels
The Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *Laydon v. Mizuho Bank, Ltd., et al.*, No. 12-cv-3419

Dear Judges Daniels and Buchwald:

  We are counsel for Plaintiff Jeffrey Laydon. We write to apprise the Court of new facts and to correct certain factual representations made by counsel for Defendant JPMorgan Chase Bank N.A. ("JPMorgan") in its June 4, 2012 letter (the "June 4 Letter") regarding whether the above-referenced action (the "Euroyen TIBOR Litigation") should be transferred to Judge Buchwald for coordinated proceedings with the USD Libor Litigation.

  **1. Service of the TIBOR Complaint is Underway But Far from Complete.** Plaintiff's counsel has been working diligently to effectuate service of the April 30, 2012 complaint in the Euroyen TIBOR Litigation (the "TIBOR Complaint"). Those efforts have resulted in the agreement of fifteen defendants (hereinafter, the "Stipulating Defendants")[1] to waive service of the TIBOR Complaint pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.

  Notwithstanding Plaintiff's counsel's efforts, potential issues regarding service over certain Japanese bank defendants <u>unique</u> to the Euroyen TIBOR Litigation remain open. Plaintiff's counsel is in the process of meeting and conferring with some **but not all** of these Japanese bank defendants regarding service. Although Plaintiff's counsel is hopeful that agreements can be reached with certain of these Japanese bank defendants, service pursuant to The Hague Convention may ultimately, and is likely to, be necessary for one or more Japanese bank defendants. Plaintiff's counsel is already in the process of arranging for foreign service,

---

[1] The Stipulating Defendants are The Bank of Tokyo-Mitsubishi UFJ, Ltd., Mitsubishi UFJ Trust and Banking Corporation, JPMorgan Chase Bank, NA, The Royal Bank of Scotland Group PLC, Deutsche Bank AG, UBS AG, BNP Paribas S.A., The Norinchukin Bank, Barclays Bank PLC, HSBC Holdings, plc, Citibank NA, Credit Agricole CIB, Lloyds Banking Group PLC, Société Générale, and Sumitomo Mitsui Banking Corporation.

{2545 / LTR / 00113117.DOCX v2}



The Honorable George B. Daniels
The Honorable Naomi Reice Buchwald
June 5, 2012
Page 2

and has been informed by its international process server that service pursuant to The Hague Convention takes on average four months to complete.

Defendants' motions to dismiss in the USD Libor Litigation are due to be filed by the end of **this** month, and will be fully briefed by **September 2012**. June 4 Letter, at p. 3. According to the international process server's estimates, service of the TIBOR Complaint will likely **not** be completed until **October 2012**, or possibly later. Recognizing the disparities in the time that defendants' responses to the TIBOR Complaint will be due, Plaintiff and the Stipulating Defendants (which includes JPMorgan and other defendants supporting coordination), have agreed to adjourn the time to respond to the TIBOR Complaint *sine die* pending further agreement between the parties or Order of the Court.

Defendants supporting coordination also neglect to consider the impact on scheduling that would result from the filing of any new and/or amended pleadings in the Euroyen TIBOR Litigation. The filing of such pleadings will further add to the already significant disparity in the procedural posture of the Euroyen TIBOR Litigation and the more procedurally advanced USD Libor Litigation.

**2. Defendants' Mischaracterize Plaintiff's Position on Transfer.** In their June 4 Letter, Defendants mischaracterize Plaintiff's position on transfer and construct the straw-man argument that transfer under SDNY Rule 13(a) does not require the actions to be completely identical. June 4 Letter, at p.1-2 ("Plaintiff argues that this action should not be transferred because the allegations, causes of action and parties in both litigations are not **completely identical**.") (emphasis added).

Plaintiff's counsel did not argue that transfer and coordination were improper because the two litigations were not completely identical. Far from it. Instead, Plaintiff expanded on the critical factual and legal differences – as **acknowledged** by Defendants – that exist between the two litigations that we respectfully submit weigh against transfer and coordination. See May 25, 2012 Un-Docketed Letter of Vincent Briganti to Judge Daniels and Judge Buchwald, *passim* (noting that the Euroyen TIBOR Litigation was brought on behalf of a **different** putative class, for **different** class contracts, allegedly manipulated by **different** submissions of false reports, by **different** defendants, to **different** reporting bodies, pursuant to **different** bank reporting policies and procedures, for **different** interest rates, over **different** periods of time, and asserting **different** claims and requests for relief).

None of the cases cited by Defendants in support of transfer and coordination share the same level of critical differences that exist herein, *i.e.*, cases involving different classes, different class contracts, different defendants, different class periods, different bank reporting policies and



The Honorable George B. Daniels
The Honorable Naomi Reice Buchwald
June 5, 2012
Page 3

procedures, **and** different claims for relief.[2] Plaintiff's counsel is unaware of any prior case transferred under Rule 13(a) of the S.D.N.Y. Rules for the Division of Business Among District Judges or by the Judicial Panel of Multidistrict Litigation pursuant to 28 U.S.C. § 1407 where such critical differences existed across the board.

Lastly, defendants' position that the differences between the two litigations are dissimilar enough to shield them from discovery in the USD Libor Litigation of their productions to the numerous governmental agencies that are investigating their false reporting of TIBOR and YEN Libor rates (see Dkt. 115, 11 MDL 2262, Feb. 17, 2012 Defendants' Letter to Judge Buchwald, at p. 18), but similar enough to support transfer and coordination with the Euroyen TIBOR Litigation is not well-taken. Defendants should not be allowed to have their cake (and eat it too).

Respectfully submitted,

Vincent Briganti/RG
Vincent Briganti

cc: Counsel of Record (by e-mail)

---

[2] *See, e.g., In re Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007) (cases involved the same patents); *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, MDL 1871, 2008 WL 1391918 (Apr. 8, 2008) (cases involved the same diabetes drug manufactured by the same defendant); *In re: Checking Account Overdraft Litig.*, MDL2036, 2009 WL 1658847 (June 10, 2009) (cases involved the same industry-wide bank posting policies).

{2545 / LTR / 00113117.DOCX v2}